# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| B.C., a minor, by her father and next friend, D.C., | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 6026 |
| v. | ) ) | Judge Edmond E. Chang |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

B.C., a minor acting through her father,[1] has moved for summary judgment, seeking reversal or remand of the Social Security Administration (SSA) Commissioner's decision denying her application for Supplemental Security Income. R. 14. The SSA has filed a cross-motion for summary judgment, requesting affirmance.[2] R. 23. For the following reasons, this Court grants Plaintiff's motion and remands for a determination consistent with this opinion.

## I.

B.C. was born in 1996. Early on, testing revealed that she had heightened levels of lead in her blood. R. 10, Administrative Record (AR) ¶¶ 23-25. During the first grade, after teachers noticed her low scores on achievement tests, B.C. was examined

---

[1]Federal Rule of Civil Procedure 5.2(a)(3) requires that filings refer to a minor only by the minor's initials.

[2]This Court has jurisdiction under 28 U.S.C. § 1331.

by a psychologist. The psychologist reported that B.C. had average intelligence. *Id.* ¶ 24.

At the end of first grade, B.C.'s school prepared an Individualized Education Program. According to the program, B.C. needed special education services, despite being well-adjusted, happy, friendly, and outgoing. *Id.* ¶ 25. The summer after first grade, Dr. Darrell Snyder examined B.C. and diagnosed her with an unspecified learning disorder. *Id.* ¶ 26. Soon after, the Illinois Disability Determination Service (a service provided by the Illinois Department of Human Services) sent Dr. Erica Altman to examine B.C. *Id.* ¶ 29. Dr. Altman found that B.C.'s learning disability was not sufficient to qualify as a "disability" for Social Security Income (SSI) payments. *Id.*

B.C. transferred schools before the beginning of the second grade. *Id.* ¶ 25. Two months into the school year, B.C.'s teachers reported that she was well behaved and got along with everyone. *Id.* The teachers also noted, however, that B.C.'s cognitive impairment was interfering with her schoolwork. *Id.* She made careless mistakes and was unable to finish tasks on time. *Id.* The Disability Determination Service then sent a second psychologist, Dr. John Tomassetti, to examine B.C. Dr. Tomassetti, like Dr. Altman, found that B.C.'s learning disability did not qualify as a "disability" under SSI. *Id.* ¶ 29.

Towards the end of the school year, B.C. was found to be eligible to continue special education services. *Id.* ¶ 29. Despite low scores on standardized tests and general struggles with school, B.C. was promoted to the third grade. *Id.*

B.C. continued to receive special education during the next two years. By the end of the fourth grade, her Individualized Education Program indicated that she was progressing slowly. *Id.* ¶ 26. Although her performance improved, her reading level was at a second grade level, reading comprehension at a mid-second grade level, and math at an early third grade level. *Id.* Special education for B.C. was increased to 300 minutes per week for English/Reading and Math. In the fifth grade, B.C.'s report card indicated that she had been "very attentive and interested in reading" and "very disciplined." *Id.* ¶ 27.

B.C.'s mother originally applied for SSI payments in May 2003, when B.C. was in the first grade. *Id.* ¶ 20. The claim was denied, reconsidered, and denied again. Rhonda Miller was granted a hearing, which took place in April 2005. Several months later, the ALJ ruled in B.C.'s favor, finding that B.C. was disabled because her impairment functionally equaled a listed impairment. *Id.* Specifically, the ALJ concluded that B.C. had an extreme functional limitation in acquiring and using information. *Id.*

After conducting a review in January 2006, the Appeals Council found that the ALJ's decision was not supported by substantial evidence. *Id.* The claim was remanded and reassigned to another ALJ. B.C.'s mother passed away in December 2006, and B.C.'s father became her primary caretaker. *Id.*

The hearing following remand was held in March 2007. At this hearing, Dr. Keenan Ferrell testified that he examined B.C. and based on his analysis, she was

disabled. *Id.* ¶ 21. Two months later, the ALJ ruled against B.C., finding that although B.C. passed the first two steps in meeting the disability standard, she did not meet the requirements of the third step. *Id.* ¶¶ 23-37. Specifically, the ALJ found that B.C. satisfied certain limitations in what is known in the regulations as "Category A" (see *infra* for further discussion), but not in "Category B." The ALJ was not convinced by Dr. Ferrell's testimony that B.C. had marked difficulties in "concentration, persistence or pace." *Id.* ¶ 30.

The ALJ also found that B.C.'s impairment did not functionally equal the listing. B.C. had a "marked limitation in acquiring and using information" but had no marked or extreme limitations in the other domains. *Id.* ¶¶ 30-37. Because B.C. did not meet, medically equal, or functionally equal the listings, the ALJ denied her benefits.

## II.

### A.

"A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). To determine whether a child is disabled, courts employ a three-step test:

> First, if the child is engaged in substantial gainful activity, the . . . SSA will deny the claim. Second, if the child does not have a severe medical impairment or combination of impairments, then he is not disabled and his claim will be denied. Third, the child's impairments must meet a

4

duration requirement and must meet, medically equal or functionally equal, the severity of any of the Listings of Impairments contained in 20 C.F.R. pt. 404, subpt. P, App. 1.

*Hopgood*, 578 F.3d at 699 (citations omitted).

The third step – meeting or medically equaling a listing for organic mental disorders – requires that a child satisfy both Categories A and B described in 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.02. To satisfy Category A, the child must have one of the ten listed impairments, one of which is "Impairment of cognitive function, as measured by clinically timely standardized psychological testing . . . ." 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.02A(9). To satisfy Category B, the condition in Category A must result in at least two out of four enumerated symptoms. For children between the ages of 3 and 18, these enumerated symptoms are:

a. Marked impairment in age-appropriate cognitive/communicative function . . .; or

b. Marked impairment in age-appropriate social functioning . . .; or

c. Marked impairment in age-appropriate personal functioning. . .; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, App. 1, § 112.02B(2). A "marked" rating means "more than moderate but less than extreme." *Id.* § 12.00C.

If the impairment does not meet or medically equal Category A or B, a child may still be considered disabled if the child's condition "functionally equals" a listing. 20 C.F.R. § 416.924(d). The regulations list the following six domains of functioning:

i. Acquiring and using information;

      ii.      Attending to and completing tasks;

      iii.     Interacting with and relating to other people;

      iv.     Moving about and manipulating objects;

      v.      Caring for [one's] self; and,

      vi.     Health and physical well-being.

20 C.F.R. § 426.926a(b)(1). Functional equivalence can be found in one of two ways: a child's impairment results in (1) "marked" limitations in two domains or (2) an "extreme" limitation in one domain. An extreme limitation is when the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." *Id.* at 426.926a(e)(3).

### B.

In this suit, B.C. challenges the ALJ's finding that she did not satisfy a second[3] symptom in Category B – namely, that she did not have marked difficulties in "concentration, persistence, and pace." R. 15 at 11. Judicial review of an ALJ's decision is limited to determining whether it is supported by "substantial evidence" and free of harmful legal error. *Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010) ("Although judicial review of the decisions of administrative agencies is deferential, it is not abject."); *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence simply means any "relevant evidence as a reasonable mind might accept as

---

[3] The ALJ did accept Dr. Ferrell's conclusion that B.C. has a marked impairment in age appropriate cognitive functioning, which is one Category B symptom, but B.C. must meet two Category B symptoms.

adequate to support a conclusion." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks omitted). If the evidence would allow reasonable people to differ as to whether the claimant is disabled, the ALJ's decision to deny the application must be upheld. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ must "build an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms*, 553 F.3d at 1093. The ALJ is not required, however, to mention and discuss very single piece of evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). A reviewing court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms*, 553 F.3d at 1098. If the ALJ makes an error of law, the district court "may reverse without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir.1999); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997).

In challenging the ALJ's findings, B.C. first argues that the ALJ incorrectly relied on non-medical evidence in rejecting Dr. Ferrell's testimony. R.15 ¶¶ 11-12. Relying on a 1999 decision, B.C. argues that medical equivalence must be based on medical evidence alone. *Id*. ¶ 12 (quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)). But *Hickman* predates the issuance of amended regulations that do allow the SSA to rely on non-medical evidence. *Compare* 20 C.F.R. § 416.926(b)(2000) ("Medical

7

equivalence must be based on medical findings.") with 20 C.F.R. § 416.926(c) (2010) ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s). . ."). Thus, the language in *Hickman* is not applicable and the ALJ correctly relied on non-medical evidence.

Next, B.C. challenges the ALJ's decision to reject Dr. Ferrell's expert medical testimony. The SSA argues that the testimony was properly rejected because the ALJ relied on Dr. Altman's and Dr. Tomassetti's results. R. 23 ¶ 10. To be sure, the ALJ does mention the two psychologists in the opinion denying benefits. But the opinion fails to adequately explain why the ALJ found their testimony – which was based on an examination four years before Dr. Ferrell's examination – more convincing than Dr. Ferrell's testimony. R.10 ¶¶ 20-37. The ALJ stated that Dr. Ferrell "did not consider other school reports, testimony or reports of her parents that claimant has normal ability to sustain attention and concentration on essentially all of her non-academic activities." *Id.* ¶ 30. But this explanation is not supported by the record. During the March 2007 hearing, Dr. Ferrell testified that he reviewed all the files and listened carefully to all the testimony:

> ALJ: Have you had a chance to review the relevant material in the exhibit file?
>
> Dr. Ferrell: Yes I have your honor.
>
> ALJ: And you were present during and listened carefully to the claimant's testimony?
>
> Dr. Ferrell: Yes I have.

8

*Id.* ¶¶ 409-10. Following this exchange, Dr. Ferrell went on to describe, in detail, why he believed B.C. had marked difficulties in "consistency, persistence, and pace." *Id.* ¶¶ 413-15. The ALJ, however, mistakenly believed that "concentration, persistence, and pace" is measured solely by non-academic factors:

> Q: And the marked concentration, persistence and pace – what, what makes – *what are you relying on to categorize that as a marked deficit?*
>
> A: In the data there is evidence where she struggles to get work done on time and she struggles with – on Exhibit 2F page 26, the teacher talks about her problem in providing organized or explanations and adequate descriptions and then also applying problem solving skills in class discussions. And, my thought is that given more time, given an unusual amount of time she probably could come up with answers, but in terms of maintaining normal pace she's going to struggle in that area.
>
> Q: And you don't consider that to be part of the cognitive impairment?
>
> A: Oh yes, ma'am. That's part of the cognitive impairment and what did I –
>
> Q: Well, the slow – I guess that, that has not been my understanding of the domain . . . *the persistence and pace, that . . . failure to process quickly – I usually look at that in the cognitive and not . . . the concentration . . . domain.*

*Id.* ¶¶ 413-14 (emphasis added). But the purpose of the concentration, persistence, and pace category is to "identify the child who cannot adequately function in primary school because of a mental impairment. Although grades and the need for special education placement are relevant factors which must be considered in reaching a decision . . . they are *not* conclusive." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00C(3) (emphasis

added). In other words, both non-academic factors *and* academic factors must be considered.

The SSA cites B.C.'s grades as evidence that B.C. did not have marked difficulties in concentration, persistence, and pace. R. 23 ¶¶ 10-11. During the fourth grade, B.C. received all As, Bs, and Cs. In the fifth grade, she earned the same grades, including one D. These grades, according to the SSA, suggest that B.C. did not fall behind her classmates. *Id.* But this argument overlooks the *lower* standard used to grade B.C.'s classroom performance. After the second grade, B.C. was evaluated under modified criteria. AR ¶¶ 235, 320-21, 326. She was permitted to give oral responses to exams. She was graded based on the percentage of work completed and on class participation. Although the ALJ did acknowledge that modified criteria were used,[4] the opinion never addresses the lower standards for academic performance. Instead, the ALJ references the As and Bs on B.C.'s report card and cites comments discussing B.C.'s attitude, enthusiasm, and agreeableness. AR ¶ 30.

The ALJ states that "the record does not establish that claimant has marked limitations in two of the relevant areas required to satisfy part B of the listing, as discussed in detail below." *Id*. Yet the ALJ does not pinpoint reports or evidence that specifically addresses B.C.'s difficulties in concentration, persistence, or pace. Instead, the opinion relies primarily on the perception that B.C. has "normal and social

---

[4]"Claimant had modified grading scales, as part of her Individualized Education Program for some, but not all, of her academic subjects and achieved passing grades each year in every subject . . . Claimant was awarded As or Bs in conduct in each class for which conduct was graded." AR ¶ 27.

10

personal function for a child her age." *Id.* B.C.'s ability to get along with her friends and follow general directions is not substantial evidence sufficient to overcome Dr. Ferrell's analysis of B.C.'s marked difficulties in concentration, persistence, or pace, difficulties that would not necessarily generate poor social functioning. On remand (rather than outright reversal), the ALJ should reconsider the evidence consistent wit this opinion.

### III.

For the foregoing reasons, the Court denies the SSA's motion for summary judgment [R. 23], grants B.C.'s motion for summary judgment [R. 14], and orders the case be remanded to the ALJ for further consideration of whether B.C. has marked difficulties in concentration, persistence, or pace.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

Date: April 22, 2011